# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ION GEOPHYSICAL CORPORATION, | ) ) ) | |
| Plaintiff | ) | |
| v. | ) ) | Civil No. 14-410 |
| HEMPFIELD TOWNSHIP, | ) ) | |
| Defendant. | ) | |

## Opinion

On March 27, 2014, Plaintiff ION Geophysical Corporation filed this Declaratory Judgment action against Defendant Hempfield Township seeking relief from this Court that would, *inter alia*, permit ION to conduct seismic testing in Hempfield Township and conversely prohibit the Township from interfering with ION's operations in conducting seismic testing. Along with its Complaint, ION also filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking to enjoin the Township from interfering with the proposed operations of ION in conducting seismic testing in Hempfield Township. ECF No. 2. Underlying this action is the state of law in the Commonwealth of Pennsylvania regarding the exploitation and recovery of natural gas in the geological formation known as the Marcellus Shale Formation relative to environmental and habitability concerns of those living in such areas. As both parties acknowledge, the state of the law is in flux.

A hearing to determine if a preliminary injunction should issue was held before this Court on April 2, and April 3, 2014. Oral argument was held on April 7, 2014, and this matter is now ripe for resolution. For the reasons that follow we will grant ION's motion for a preliminary injunction.

At the hearing both sides presented testimony and evidence. ION presented testimony from Ray Wall, an Operations Supervisor for ION, Joe Brown, Project Manager for Cougar Land Services, a subcontractor to ION, and Simon Stockwell, a Geophysicist was permitted to testify an expert in the area of seismic testing. The Township presented testimony from Leslie J. Mlakar, Esquire, the Solicitor for Hempfield Township, Scott Avolio, Esquire, Andrew L. Walz, the Hempfield Township Manager, and Thomas Logan, a Hempfield Township property owner opposed to the seismic testing.

We found all witnesses to be credible and professional in their presentation. Although the Township cross-examined ION's witnesses, the cross-examination was not aimed at discrediting the testimony as to ION's general operations, its method of obtaining a variety of permits, or method in conducting the seismic testing. The only factual dispute, which we need <u>not</u> decide, was whether the Township had initially indicated to ION that it would enter into a seismic agreement and then later backed out. That is immaterial to the present posture of the case. Legal issues to be decided by the Court are all that remain. The basic issue here is whether a township can prohibit seismic testing on a township road. Counsel for both sides prepared helpful briefs on short notice and presented excellent oral arguments.

**I.      Relevant Factual Background**

ION Geophysical Corporation is a Delaware Corporation with its principal place of business in Houston, Texas. Hempfield Township is a Second Class Township in Westmoreland County, Pennsylvania, with offices located in Greensburg, Pennsylvania. ION is in the business of conducting seismic testing to assist oil and gas operators in locating hydrocarbons below the earth's surface. ION has contracted with oil and gas operators to perform seismic surveys that

require the collection of data in several municipalities, townships, and boroughs located in Allegheny, Westmoreland, and Fayette Counties.

ION has contracted for three separate projects in Westmoreland County. The first project is called GroundhogSCAN. This project covers approximately 270 square miles, none of which is in Hempfield Township, and it has been completed. The second project is called GroundhogSCAN SOUTH. It covers approximately 100 square miles, and it too is completed. Nine square miles of the GroundhogSCAN SOUTH project is located in Hempfield Township. The final project, and reason this action was filed, is called GreensburgSCAN.

The GreensburgSCAN project covers approximately 115 square miles, with approximately 28 square miles of the project located in Hempfield Township. According to Ray Wall, an Operations Supervisor for ION, this project is ongoing, and seismic testing in Hempfield Township is set to begin no later than April 23, 2014.

ION submitted exhibits to show that it has obtained numerous surface permits and mineral permits for the entire project area of the GreensburgSCAN. Ex. A1 & A2. In addition, ION has obtained 313 surface permits from property owners located in Hempfield Township. Ex. B. ION's evidence also demonstrated that it has obtained a Blasting Activity Permit from the Pennsylvania Department of Environmental Protection (Ex. C), a Highway Occupancy Permit from the Pennsylvania Department of Transportation (Ex. D-1), and a Permit to use Westmoreland County roads from the Westmoreland County Engineer (Ex. D-2).

As part of the project ION also intends to use Hempfield Township roads to conduct seismic testing. Testimony indicated that the seismic testing will be performed by truck located on the road using the "Vibroseis," or vibratory truck, method.

ION contracted with Cougar Land Services to assist ION in obtaining necessary permits, including permits for use of Hempfield Township roads. Joe Brown, a project manager with Cougar Land Services, testified that he initially contacted the Hempfield Assistant Township Supervisor, Bruce Beitel, in the fall of 2013 to discuss ION's use of the Township's roads for seismic testing. Mr. Beitel reported this contact in an email to the Township Manager, Andrew Walz. Email from Beitel to Walz and L. Dellera, 12/16/2013, attached as part of Ex. 3. Mr. Beitel explained that Mr. Brown contacted him about seismic testing on Hempfield Township roads and asked whether there were any road requirements. Id. Mr. Brown then followed up with Mr. Beitel by email on December 17, 2013, in which he attached maps representing the area where ION would be conducting its testing in Hempfield Township. Email from Brown to Beitel, 12/17/2013, attached to Ex. 3. Mr. Brown also indicated that Allen Gray from McDonald Land Services would attend any meeting that would be scheduled with Township representatives. Id. A series of emails were then exchanged between Mr. Brown and Mr. Beitel, with the two eventually agreeing to meet on Thursday, January 9, 2014. See Emails attached to Ex. 3.

Mr. Brown testified that during the meeting the solicitor for the township, Leslie Mlakar, Esquire, was brought in and shortly thereafter the meeting was concluded. Another meeting was held on Thursday, January 30, 2014. It is ION's position that representatives from the Township indicated to ION's representatives that the Township would be willing to permit seismic testing subject to the execution of a written agreement between the parties. It is undisputed that Hempfield Township does not have an ordinance regulating seismic testing. According to ION, in such cases ION attempts to work with the municipality to enter into a Seismic Agreement that would address any concerns a municipality might have about the use of local roads for seismic

testing. It is the Township's position that no one from the Township agreed to permit seismic testing on Township roads subject to a written agreement between the parties. As previously noted, we need not determine this factual dispute in order to resolve the issue before us.

In any event, on February 5, 2014, ION's counsel, Kevin Gormly, Esquire, sent an email to Mr. Mlakar that stated in part as follows:

> I am attaching a draft of Seismic Agreement that we have used with other Townships. It obviously has to be redlined to address some of the concerns raised at the meeting. After you have had a chance to review, I suggest we have a phone call to talk about specific revisions.

Email from Gormly to Mlakar, 2/5/14. Ex. F, with attached draft Seismic Operation Agreement. Mr. Gormly apparently did not receive a response from the Township until February 25, 2014, when Mr. Mlakar informed him that Hempfield Township would not enter into an agreement and it would not permit ION to conduct seismic testing on Township roads.

The February 25th communication from Mr. Mlakar occurred the day after the February 24, 2014 Board of Supervisors Monthly Meeting at which the Supervisors voted against authorizing the Solicitor and Township Manager to negotiate with ION regarding seismic testing. Ex. 2, Hempfield Township Board of Supervisors Monthly Meeting, 2/24/2014, at 5, ¶ r. Although this meeting was public and was duly announced, neither Mr. Gormly nor any ION representative was specifically informed that the Supervisors intended to vote on such a proposal. The fact that Mr. Gormly was unaware of this event is evident by his actions in sending a letter on February 28, 2014 to Mr. Mlakar, after the meeting, in which he continued to attempt to negotiate an amicable resolution between ION and the Township.

Mr. Mlakar responded to Mr. Gormly by letter dated March 4, 2014, in which he stated, in part, as follows:

> In response to your letter of February 28, 2014 and our subsequent Phone conversation of March 3, 2014, I wish to advise you that both the Township of Hempfield and the Township of Penn have no objection to ION doing seismic testing on private property. Both Townships however, do have an objection to the use of the Township Roads and the accompanying rights-of-ways for seismic testing.
> 
> It is the Townships' position that the Township Roads are, by Pennsylvania Law, for the use of a public purpose. The Townships do not consider the seismic testing to be a public purpose.
> 
> I also wish to advise you that if an action is filed against the Township of Hempfield and the Township of Penn, the Township of Penn will agree to abide by any determination made against the Township of Hempfield. The Township of Penn would not participate in defending this action; and, only the Township of Hempfield would.

Letter from Mlakar to Gormly, 3/4/2014, Ex. F. Facing this impasse and with the timeline for beginning the project fast approaching, ION filed the instant action.

## II. Jurisdiction

The first issue we must address is whether we properly have jurisdiction over this matter. The Township contends that we lack subject matter jurisdiction over this case. ION submits that we have jurisdiction based on the diversity of citizenship of the parties and the amount in controversy exceeding $75,000 pursuant to 28 U.S.C. § 1332, and that we also have jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the United States Constitution. It is clear to the Court that at a minimum we have subject matter jurisdiction over this matter under section 1332 as there is complete diversity of the parties and the evidence established that the amount in controversy is over $75,000.

We also decline to abstain from this matter, as requested by the Township The Township contends we should abstain because this case involves difficult issues of state law bearing on policy problems of substantial public import whose importance transcends the result in this case. National City Mortgage Co. v. Stephen, 647 F.3d 78, 83 (3rd Cir. 2011) (quoting Colorado River Water Conservation District v. United States, 424 U.S. 800, 814 (1976). The difficulty as we

see it is the undisputed fact that Hempfield Township has no law governing the use of its roads for seismic testing. The Township appears to rely on its position regarding its authority over the use of Second Class Township Roads as the state law at issue in this case. Def. Opposition 11 ("The question is whether the Plaintiff has the right to use roads for which the Township has a limited right of way to use for 'the public interest,' and which are defined by statute as being designed for 'vehicular traffic.' This matter is governed by the Second Class Township Code, and the laws and statutes of the Pennsylvania Constitution.") We disagree that the use of Second Class Township roads by Pennsylvania's numerous second class townships' governing authorities is a difficult issue.

Seismic testing has been, and continues to be, conducted on public roads in the Commonwealth of Pennsylvania, its Counties, and local municipalities, including in Hempfield Township. Therefore, the Township in this case appears to be contending that in fact seismic testing on roads in Second Class Townships in Pennsylvania has never been authorized by the Second Class Township Code. While this is a novel theory, we cannot say that it is a difficult issue of state law requiring this court to abstain. Thus we conclude that we do have subject matter jurisdiction, and we will not abstain.

## III. Discussion

Four factors govern a district court's decision whether to issue a preliminary injunction: "'(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest.'" Am. Exp. Travel Related Services, Inc. v. Sidamon–Eristoff, 669 F.3d 359, 366 (3d Cir.2012) (quoting Crissman v. Dover Downs

7

Entertainment Inc., 239 F.3d 357, 364 (3d Cir.2001). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir.2005). The court need only consider factors three and four if relevant, or if the first two factors have been met. Tenafly Erev Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 157 (3d Cir.2002); AT & T v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir.1994).

Injunctive relief in any form is an extraordinary remedy that should be granted in "limited circumstances." AT & T v. Winback and Conserve Prog. Inc., 42 F.3d 1421, 1427 (3d Cir.1994). If the record does not support a finding of both irreparable injury and a likelihood of success on the merits, then a preliminary injunction cannot be granted. Marxe v. Jackson, 833 F.2d 1121 (3d Cir.1987). Irreparable injury is established by showing that Plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), *cert. denied*, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the Plaintiff must show immediate irreparable injury, which is more than merely serious or substantial harm. ECRI v. McGraw–Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987).

Injunctive relief may be issued "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c).

Based on our review of the evidence and testimony we conclude that ION Geophysical Corporation has established a reasonable likelihood of success on the merits and irreparable

harm may result without the issuance of an injunction. We further conclude that the issuance of a preliminary injunction in favor of ION will not result in greater harm to Hempfield Township, and that the public interest favors such relief.

### A. Reasonable Probability of Success

We conclude that ION has shown a reasonable probability that it will succeed on the merits on its claim that the Township's conduct violates ION's substantive and procedural due process rights and ION's equal protection rights under the United States Constitution.

Had the Township entered into a Seismic Agreement with ION, such an action would be an implicit approval of seismic testing on Township roads. Any agreement entered into would then be the result of a reasoned and informed negotiation in which both sides' interests were taken into account and addressed. Similarly, if the Township had passed an ordinance with regard to seismic testing, then the ordinance could not be vague, arbitrary, or unreasonable. Moreover, any ordinance purporting to regulate seismic testing would have to be in compliance with the preemption provision of Pennsylvania's oil and gas law as set forth in Title 58 of the Pennsylvania Consolidated Statutes.

We agree with ION that the Township's ban on seismic testing on its roads is an attempt to regulate seismic testing by omission, in the absence of any ordinance regulating seismic testing. By refusing to pass a relevant ordinance or otherwise engage with ION, the Township's conduct is unreasonable and arbitrary and deprives ION of any avenue to seek accommodation or review of the Township's "regulation by inaction."

In addition, there is no dispute that ION has obtained the necessary permits and related legal permissions to conduct seismic testing on State and County roads and, significantly, has obtained rights from many affected Hempfield Township surface and mineral owners. The

Township's position that it has no power to permit any use other than vehicular use and public purpose use of its right of ways is simply untenable.

After hearing the testimony we find that ION approached the representatives of Hempfield Township in good faith in order to acquire any necessary permits to conduct seismic testing and to provide assurances and comply with requests to address safety concerns of the Township. It appears to the Court that the Township then gave the impression to ION that it was considering its options as to the issue of seismic testing on its roads until it abruptly notified ION that it would not permit such testing at all and it would not enter into any agreement. We do not perceive any nefarious purpose on the part of the Township in its conduct. Township officials appear to have been considering what strategy to undertake that might permit the Township to lawfully prohibit seismic testing in its Township in light of recently decided case law from the Pennsylvania Commonwealth Court and the Pennsylvania Supreme Court. In other words, it appears to the Court that the Township was looking to gain an advantageous position in an area that Pennsylvania has clearly legislated in favor of the oil and gas industry.

This brings us to the relevant recent Pennsylvania case law. The Pennsylvania Legislature passed Act 13 of 2012, a statute amending the Pennsylvania Oil and Gas Act, 58 Pa.C.S. §2301-3504. Act 13, as it is known, "repealed parts of the existing Pennsylvania Oil and Gas Act and added provisions re-codified into six new chapters in Title 58 of the Pennsylvania Consolidated Statutes." Robinson Township v. Commonwealth, 83 A.2d 901, 915 (Pa. 2013). As the Supreme Court stated it was the "development of the natural gas industry in the Marcellus Shale Formation [that] prompted enactment of Act 13." Id. There is no question but that this Act clearly favors oil and gas extraction in Pennsylvania. Id. at 928 ("There is no doubt that the

General Assembly has made a policy decision respecting encouragement and accommodation of rapid exploitation of the Marcellus Shale Formation . . . .").

The Pennsylvania Supreme Court's landmark decision in <u>Robinson Township</u> was discussed during the hearing. In <u>Robinson Township</u>, the Supreme Court held that certain portions of Act 13 were unconstitutional in violation of the Environmental Rights Amendment of the Pennsylvania Constitution. <u>Id.</u> at 1000. Since the portions of Act 13 that were held unconstitutional never went into effect, none of the conduct in this case concerns those provisions.

Although it is certainly a significant case and the result of that case is in part motivating the Township's actions, the outcome of that case is not directly relevant to resolution of the instant case. We recognize that the <u>Robinson Township</u> case affirmed the significance of Pennsylvania's Environmental Rights Amendment in relation to local governments' ability to assure the public health, safety, and welfare of their citizens. However, because the provisions that were deemed unconstitutional by the Supreme Court never went into effect we cannot presume that the <u>Robinson Township</u> case has any effect on Pennsylvania's existing oil and gas laws enacted prior to Act 13, or that were not at issue in the case. Moreover, local governments typically act to ensure the health, safety, and welfare of its citizens through enacting laws, ordinances, regulations or some other pronouncement, whereas in this case we are faced with a local government that has not officially enacted any law.

Hempfield Township cites the <u>Robinson Township</u> case for the proposition that there is no Pennsylvania law that requires the Township to allow seismic testing in the Township or on Hempfield Township public roads. Def. Opposition 17-19. The Township's summary of the case and holding are correct, but we do not view the instant dispute to concern whether

Pennsylvania explicitly requires a locality to allow seismic testing. We must resolve this dispute without reference to laws that never went into effect because they were held to be unconstitutional. This case must be determined under existing Pennsylvania oil and gas law; that is, the law existing prior to Act 13, and the provisions of Act 13 provisions that were not struck by the Pennsylvania Supreme Court. This leads us to the unremarkable conclusion that seismic testing is permitted in municipalities in Pennsylvania, just as seismic operations have been conducted throughout Pennsylvania prior to the passage of Act 13.

Other recent Pennsylvania cases that we must address are cases brought in the Commonwealth Court by Seitel Data, LTD, a corporation that, like ION, is in the business of providing seismic data to the oil and gas industry. The Seitel cases occurred in two groups. The first groups of cases were asserted against Hopewell Township and the Hopewell Township Board of Commissioners (No. 388 M.D. 2013), and Potter Township and the Potter Township Board of Supervisors (No. 389 M.D. 2013). The second groups of cases were asserted against Center Township and the Center Township Board of Supervisors (No. 492 M.D. 2013), Shippingport Borough and Shippingport Borough Council (No. 493 M.D. 2013), and Greene Township and the Greene Township Board of Supervisors (No. 494 M.D. 2013).

In the first group of cases Seitel sought injunctive relief with respect to each Townships' ordinance or regulation regarding seismic activities. Senior Judge Keith B. Quigley determined that the Townships' conduct was unreasonable and likely violated Seitel's due process rights. Seitel Data, LTD v. Hopewell Township, Nos. 388 & 389 M.D., Mem. Op. at 6 (Pa.Commw. Sept. 3, 2013). Judge Quigley also found irreparable harm by virtue of Seitel's inability to fulfill its contractual obligations as a result of the laws enacted by the Townships. Id. at 8. Thus, enforcement of the Townships' ordinance and regulations was enjoined.

In the second group of cases Seitel again sought injunctive relief, however in these cases Center Township and Shippingport Borough did not enact a regulation or ordinance regarding seismic activity but instead required Seitel to enter into an agreement that contained terms "nearly identical" to the laws "enjoined in the Hopewell and Potter Township litigation." Seitel Data, LTD v. Center Township, Nos. 492, 493, & 494 M.D., Mem. Op. at 4 (Pa.Commw. Nov. 13, 2013). Greene Township did pass a resolution, but then later rescinded it. Because the terms that the local governments were attempting to impose on Seitel were nearly identical to the enjoined laws in the prior cases Judge Quigley again enjoined the municipalities from interfering with Seitel's seismic operations. Judge Quigley noted that in its brief Seitel had made a "worthy argument" that "the municipalities are attempting to regulate seismic activity by virtue of the agreements without plainly spelling it out in duly passed ordinances or resolutions." Id. at 7. Judge Quigley went on to state that it appeared "that the agreements the municipalities seek to compel petitioner to execute are an attempt to avoid the results in the Hopewell Township and Potter Township litigation while at the same time regulating seismic activity in the stringent manner set forth in the resolution and ordinance we enjoined from enforcement." Id. Because the terms were nearly identical to the duly passed laws in the other cases, Judge Quigley presumed he had jurisdiction for purpose of the preliminary injunction only, but left open the possibility that a full panel of the Court might find that jurisdiction was not proper. Id.

It turned out in fact that a panel of the Commonwealth Court determined that the Court did not have jurisdiction under 58 PA.C.S. § 3306(1). That statute provides that any person aggrieved by the enactment or enforcement of a local ordinance may bring an action in Commonwealth Court, and in this case there was no ordinance or resolution enacted. Seitel Data, LTD. v. Center Township, --- A.3d ---, 2014 WL 890301 (Pa.Commw. 2014). Therefore

13

the Commonwealth Court transferred the matter to the Court of Common Pleas of Beaver County. The Commonwealth Court also held that Judge Quigley's preliminary injunctive relief order would remain in full force and effect consistent with its terms, which most significantly allowed time for Seitel to seek injunctive relief in the Court of Common Pleas.

These cases reveal a progression on the part of various local municipalities. First, the municipalities duly enacted an ordinance or resolution with certain restrictive terms regarding seismic operations, but enforcement of these laws was enjoined. Next, the municipalities required the seismic operators to enter into an agreement that contained nearly identical terms as were at issue in the first set of cases, but because there was no duly enacted ordinance the municipalities were not subject to Commonwealth Court jurisdiction. Nonetheless, before the jurisdictional issue was decided the municipalities were enjoined from enforcing the terms of the agreement. Finally, we arrive at the instant case where the Township's strategy is taken to the next level. Here the Township has refused to either enact an ordinance regarding seismic activity or enter into an agreement with the seismic operator. Given this history, and faced with this new circumstance, ION has chosen to bring an action in federal court, although it could have brought the action in the court of Common Pleas of Westmoreland County.

We have no qualms with the Township's actions in taking the course it deems best for its citizens. It is through such conduct in a democratic society that the contours of laws governing highly divisive topics may become more fully defined. Another avenue would be through direct involvement in electing legislators sympathetic to the Township's position in order to promote a change in the existing law. Unfortunately for the Township we see no way in finding that its course of conduct in refusing to engage with ION or to regulate seismic operations in its Township will ultimately lead to a resolution on the merits in its favor. The extraction of oil and

gas in the state of Pennsylvania is being legislated as a statewide issue and as a result local municipalities are limited in regulating such activities, primarily to enacting zoning within each Township's regulatory scheme. As Justice Eakin states in his dissent in <u>Robinson Township</u>:

> . . . like it or not, the bottom line is this—the gas in question *will* be extracted. It is going to be removed from the earth, and it is going to be transported to refineries. The question for our legislature is not "if" this will happen, but "how."

<u>Robinson Township</u>, 83 A.2d at 1015 (Eakin, J., dissenting).

We are aware that our decision impacts oil and gas extraction in the Commonwealth, but only peripherally as we make no ruling or interpretation as to any state law regarding oil and gas extraction. Moreover, in the case at bar, the Township's refusal to enact an ordinance, resolution, or other law addressing the issue of seismic testing, combined with its refusal to resolve the dispute with ION, has left ION without access to a timely state court tribunal. The Township is well aware that by not enacting an ordinance ION is in all likelihood unable to seek relief before the Commonwealth Court of Pennsylvania. Under current Pennsylvania law Hempfield Township is preempted from banning seismic testing in its Township by Pennsylvania's Oil and Gas Law under 58 Pa.C.S. § 3302. It cannot, consistent with the law, ban seismic testing by refusing to address the issue in a duly passed ordinance and by refusing to acknowledge the legitimate rights of seismic operators. Such conduct, which also removes any official avenue for an aggrieved party to seek relief from the Township, appears to this Court to violate the rights of ION. Accordingly, we find that ION has demonstrated a likelihood of success on the merits.

### B. Irreparable Injury

We conclude that ION will suffer irreparable injury if we deny their requested injunctive relief since ION will not be able to comply with its contractual duties, and will be unable to

15

obtain the data required under the contracts as such data only exists as attached to the mineral and surface owners' properties from whom ION has obtained rights.

### C. Harm to the Township

Hempfield Township has not established that it will suffer greater harm by the granting of relief to ION. The Township's argument is, in part, that the Township will suffer irreparable harm if it turns out later that its legal position was correct and that it could choose not to enter into an agreement with ION, and to simply say "no" to seismic operations on its roads. If the Township ultimately wins, it argues, it will have won the battle but lost the war as injunctive relief would mean that ION would be able to begin its operations. Obviously we have already determined that ION has a likelihood of success on the merits and so we cannot say that the Township has established that it will suffer harm. We also note that the Township has not provided evidence of specific harm as a result of ION's operations.

### D. Public Interest

The public interest here is a balancing between those who have an interest in exercising their property rights by leasing or selling their interest in mineral or surface rights to ION in order to gain an economic benefit and those who prefer to preserve their property as is and to the extent possible prevent disruption to their property and the surrounding environment. As we have noted the Commonwealth of Pennsylvania, through its elected representatives, has chosen a policy of "encouragement and accommodation of rapid exploitation of the Marcellus Shale Formation." Robinson Township, 83 A.2d at 928. As part of that policy the Commonwealth intends to regulate the oil and gas industry in as uniform a manner as possible throughout the state, which necessarily means that local municipalities power to regulate oil and gas operations is subservient to the state law. All citizens of the Commonwealth, including local municipalities

and business owners, have an interest in gas and oil operations that are safe and efficient. The evidence here did establish that seismic testing not only provides valuable data for the economic benefit of those who extract oil and gas, but also it provides valuable data for use in subsequent extraction of oil and gas to prevent unsafe and dangerous circumstances from occurring. In consideration of the Commonwealth's policy, the current state of law regarding oil and gas extraction, and the public interest in the safe and efficient exploration of oil and gas we find that the public interest favors the granting of a preliminary injunction.

## V.     Conclusion

For the reasons stated herein, we will grant ION's motion for a preliminary injunction and hereby enjoin Hempfield Township from interfering with ION's seismic testing operations as related to the rights it has obtained from surface property owners and mineral property owners in Hempfield Township and on Hempfield Township rights of ways. We are not ordering Hempfield Township to enter into a Seismic Agreement with ION, however we note that the testimony established that ION and its representatives do attempt to mitigate any damage from its operations, and it appears to genuinely want to address the legitimate concerns of the municipalities in which it conducts its operations. In this regard, it appears to be in the Township's best interest to gain ION's contractual agreement to address any concerns it has.

An appropriate Order will be entered.

Date: _April 10, 2014_

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.
Senior United States District Court Judge

17